Argued December 10, 1896; decided March 1, 1897.

## GRADY v. DUNDON.
### (47 Pac. 915.)

HIGHWAYS—JURISDICTION OF COUNTY COURTS.—In Oregon, county courts are of inferior and limited jurisdiction in the matter of laying out and establishing roads, but the same intendments obtain in favor of the regularity of their proceedings as prevail in courts of general jurisdiction, when the record shows that jurisdiction has been obtained of the particular subject and of the parties interested in locating and establishing the road: *State* v. *Myers,* 20 Or. 442, cited and applied.

ESTABLISHING PUBLIC HIGHWAYS—NOTICE IS JURISDICTIONAL—CODE. § 4063.—The legislature can prescribe the necessity and manner

of taking private property for public use, but somewhere in the course of the proceeding there must be a notice to the owner of the property affected, otherwise the taking will be without "due process of law"; so, an order of a county court establishing a county road, made without the notice required by section 4063, Hill's Code, is entirely void for lack of jurisdiction.

JURISDICTIONAL DEFECT—CURATIVE ACT.—The act of October 29, 1870 (Laws 1870, p. 67), curing defects in proceedings for laying out and establishing highways, does not make valid any proceeding of that kind that was originally void through want of notice; for, while the legislature may cure irregularities, it cannot make good retrospectively what it had no power to originally authorize.

ADVERSE USER—COUNTY ROAD.—The uninterrupted obstruction of a county road for more than ten years bars the rights of the public by adverse possession, though on a few occasions persons have been permitted to drive across the premises.

From Lincoln:   J. C. FULLERTON, Judge.

Suit to enjoin a threatened trespass on plaintiff's property under the pretense that the point of ingress was in a county road.  There was a decree for defendants, and plaintiff appeals.

REVERSED.

For appellant there was a brief and an oral argument by *Mr. Walter S. Hufford.*

For respondents there was a brief and an oral argument by *Mr. James K. Weatherford.*

Opinion by MR. CHIEF JUSTICE MOORE.

This is a suit by Catherine M. Grady against Alonzo Dundon as road supervisor, D. P. Blue as county judge, and M. L. Trapp and J. O. Stearns as county commissioners, of Lincoln County, Oregon, to enjoin a threatened trespass.  The plaintiff alleges that she is the owner in fee, and for more than ten years prior to the commencement of this suit has been in the peaceable, open, and exclusive possession of a tract of land about fifty feet in width and seventy feet in length, lying south of

and between the Oregon Pacific Railroad Company's right of way and Depot Slough, in the town of Toledo, upon which there have been erected a store and a butcher shop; that the defendants, wrongfully claiming that a county road had been laid out and established across said real property, are threatening to, and, unless restrained, will, tear down and remove said buildings, and open the pretended highway, to her irreparable injury; and prays that the threatened trespass may be permanently enjoined. The defendants, after denying the material allegations of the complaint, allege that at its regular term in May, 1867, the County Court of Benton County, which at that time had jurisdiction over the territory now included within the borders of Lincoln County, upon a petition therefor signed by twelve householders, appointed viewers and a surveyor, who viewed and surveyed a county road from a stake at the mouth of Depot Slough to a point intersecting another county road, and, having made a report thereof, the court thereafter at its said term made an order establishing a county road across said premises, in pursuance of which the road supervisor opened the same, and that it had been continuously used thereafter as a public highway until 1890, when the plaintiff, without any license therefor, obstructed the same with the said buildings; that John Graham, the plaintiff's father and grantor, was the owner of the premises in question when said proceedings were had; that he was one of the petitioners for the road, and present at and assisted in its location, and from that time until his death, in 1883, he at all times recognized it as a duly established highway, and that the plaintiff obtained her title to the said premises with notice of its location thereon. The reply having put in issue the allegations of new matter contained in the answer, the cause was referred to E. O. Potter, Esq., who took and reported the evidence, from

which it appears that the defendant introduced, over the plaintiff's objection, a copy of the order of the County Court of Benton County, which recites that the viewers and surveyor had viewed and surveyed a road as prayed for in the petition, and that, no remonstrance having been filed or claims for damages presented, it was ordered that the road so surveyed be declared a public highway, and the road supervisor was ordered to open the same; but there is no finding, nor does it otherwise appear from the record, that any notice was given of an intention to apply for the location of said road. The referee having found for the defendants, the court affirmed his report, and dismissed the suit, from which decree the plaintiff appeals.

Counsel for plaintiff contends that, the defendants having attempted to justify the threatened injury by alleging the existence of a public highway across the premises in question, the burden of proof was upon them to show that the road had been legally laid out, established, and opened; while counsel for the defendants maintain that the road was viewed, surveyed, and recorded after July 1, 1866, and that under the act of the legislative assembly, approved October 29, 1870 (Laws 1870, p. 67), all irregularities in the proceedings were thereby validated. In *Cameron* v. *Wasco County*, 27 Or. at page 321 (41 Pac. 160), it is said: "In the matter of laying out and establishing roads, County Courts are of inferior and limited jurisdiction: *Thompson* v. *Multnomah County*, 2 Or. 34; *Johns* v. *Marion County*, 4 Or. 46; *State* v. *Officer*, 4 Or. 180; *Canyonville Road Company* v. *Douglas County*, 5 Or. 284; but when the record of their proceedings shows that jurisdiction has been obtained of the subject-matter and of the parties interested in locating and establishing a county road, the same intendments obtain in favor of the regularity of their proceedings as prevail in courts of

general jurisdiction: *State* v. *Myers*, 20 Or. 442 (26 Pac. 307); *Bewley* v. *Graves*, 17 Or. 274 (20 Pac. 322)."

The record offered in evidence failing to show that any notice whatever was given of the intention of the petitioners to apply to the County Court for the location and establishment of a county road across the premises in question, it cannot be said that jurisdiction was obtained to make the order upon the validity of which the defendants rely *(Latimer* v. *Tillamook County*, 22 Or. 291, 29 Pac. 734); for the law then and now in force provides that "when any petition shall be presented for the action of the County Court for laying out, alteration, or vacation of any county road, it shall be accompanied by satisfactory proof that notice has been given by advertisement, posted at the place of holding County Court, and also in three public places in the vicinity of said road or proposed road, thirty days previous to the presentation of said petition to the County Court, notifying all persons concerned that application will be made to the said County Court at the next session for laying out, altering, or vacating such road, as the case may be": Hill's Code, § 4063. The power to appropriate private property to public use is derived from the legislative assembly, which may prescribe the mode of its exercise, and must provide a judicial tribunal for the determination of certain facts as a prerequisite to the exercise of such power (2 Kent's Commentaries, 340), but the legislative assembly cannot dispense with notice of some kind to the owner of the property affected by the location of a public highway, for to do so would be a violation of the fourteenth amendment of the federal constitution, and tantamount to the deprivation of property without "due process of law."

The question is, therefore, presented whether the legislative assembly can by an act give life to a judicial proceeding which was void for want of jurisdiction. Mr.

Endlich, in his work on Interpretation of Statutes, § 291, in discussing this subject, says: "It is a proposition too well settled by authority to admit of dispute, or call for extended discussion, that curative acts, especially upon matters of public concern, are to be allowed the retroactive effect they are clearly intended to have, even though vested rights and decisions of courts be set aside by them, so long as they do not undertake to infuse life into proceedings utterly void for want of jurisdiction.". The rule seems to be well settled that the legislative assembly may, by a subsequent act, validate a departure from a prescribed procedure when it could have adopted such a course in the first instance, but it cannot make good retrospectively acts which it had no power to permit or sanction in advance (Cooley on Constitutional Limitations, 382; *Pryor* v. *Downey*, 50 Cal. 388, 19 Am. Rep. 656); and hence it cannot by a subsequent act give life to any judicial proceeding that was void for want of jurisdiction over the parties: *Israel* v. *Arthur*, 7 Colo. 5 (1 Pac. 438); *Lane* v. *Nelson*, 79 Pa. St. 407; *Richards* v. *Rote*, 68 Pa. St. 248. Without notice of some kind, the County Court can obtain no jurisdiction of the person of the owner of real property in condemnation proceedings, and any order or judgment rendered without notice must necessarily be void, and, as the jegislative assembly cannot validate a judicial proceeding void for want of jurisdiction, it follows that no rights can be predicated upon the order of the County Court declaring the route surveyed a public highway.

The evidence tends to show that John Graham, the plaintiff's grantor, admitted, while holding the legal title, that a county road had been established across the premises, but, whatever the effect of such admissions may be, we think they are rendered inoperative by reason of an adverse user by the plaintiff and her predecessors in inter-

est.   The evidence also tends to show that the premises border upon Depot Slough, a navigable stream, and that they are submerged thereby at high tide;   that John Graham erected on the land a small warehouse, which remained there several years; that his son Joseph built a sidewalk provided with a rail and banisters across the upper end of said ~premises, about from two to five feet above the surface of the ground, and that this walk has been constantly maintained thereon more than ten years prior to the commencement of this suit.   It is true, the evidence tends to show that this walk has been taken up a few times to permit persons to drive to the slough, but otherwise there has been an uninterrupted obstruction to travel.   It may well be doubted that the road was ever opened across the premises, though it appears that about twenty years ago some persons landed horses and cattle from a scow, which were driven over the same, and that some wood and hay had been landed in the same manner and hauled across; but there has not been, in our judgment, such a use of the premises as to indicate that a public road had ever been established there.   The store and butcher shop have not been built ten years, but we think there has been such an adverse user as to bar the right of the public, and for this reason the decree is reversed, and one will be entered here perpetually enjoining the defendants from trespassing upon said premises.

REVERSED.